UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------

OLAV BERGHEIM and MORTEZA GHARIB,

                                        *Petitioners*,

                -- against –                                    **Case No.: 16-cv-01692 (LTS) (HBP)**

SIRONA DENTAL SYSTEMS, INC., and ARGES
IMAGING INC.,

                                        *Respondents*.

--------------------------------------------------


**RESPONDENTS' MEMORANDUM IN SUPPORT OF
THEIR MOTION TO VACATE ARBITRATION AWARD
AND IN OPPOSITION TO PETITION TO CONFIRM AWARD**

Mark A. Robertson
Norton Rose Fulbright US LLP
666 Fifth Avenue
New York, New York 10103-3198
Telephone: 212-318-3000
Facsimile:  212-318-3400

April 1, 2016                                        *Attorneys for Respondents Sirona Dental
Systems, Inc. and Arges Imaging Inc.*

## <u>TABLE OF CONTENTS</u>

INTRODUCTION ................................................................................................ 1

BACKGROUND .............................................................................................. 2

ARGUMENT .................................................................................................... 6

I.    BECAUSE THE ARBITRATOR DISREGARDED THE CLEAR  TERMS OF
      THE AGREEMENT, THE AWARD SHOULD BE VACATED ................................... 6

      A.    For Petitioners to be Eligible for an Accuracy Earn-Out, Product
            Finalization had to Occur On or Before November 16, 2012, but It Did
            Not................................................................................................. 8

      B.    The Arbitrator Ignored the Contractually Mandated Test Protocol
            Required to Establish Whether an Accuracy Earn-Out had been Achieved........ 11

II.   BECAUSE THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW,
      THE AWARD SHOULD BE VACATED .................................................................. 13

III.  ATTORNEYS' FEES SHOULD NOT BE AWARDED TO PETITIONERS ON
      THEIR MOTION TO CONFIRM ................................................................ 16

      CONCLUSION.............................................................................................. 18

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*187 Concourse Associates v. Fishman*,
  399 F.3d 524 (2d Cir. 2005)...................................................................................6

*Amaysing Techs. Corp. v. Cyberair Communs., Inc.*,
  C.A. No. 19890, 2004 Del. Ch. LEXIS 72 (Del. Ch. May 28, 2004)..............................14, 15

*Baker Botts L.L.P. v. ASARCO LLC*,
  ___ U.S. ___, 135 S.Ct. 2158 (2015)......................................................................16

*CF Global Trading, LLC v. Wassenaar*,
  No. 13 Civ. 766 (KPF), 2013 WL 5538659, at *11 (S.D.N.Y. Oct. 8, 2013) ........................16

*Halligan v. Piper Jaffray, Inc.*,
  148 F.3d 197 (2d Cir. 1998)..................................................................................15

*In re Heizer Corp.*,
  C.A. No. 7949, 1990 Del. Ch. LEXIS 71 (Del. Ch. May 25, 1990)........................................14

*Henry Hoffman Printing, Inc. v. Local 261*,
  950 F.2d 95 (2d Cir. 1991).............................................................................6, 8, 9, 13

*Katz v. Feinberg*,
  167 F. Supp. 2d 556 (S.D.N.Y. 2001), *aff'd*, 290 F.3d 195 (2d Cir. 2002) .............................7

*Leed Architectural Products, Inc. v. Local 6674*,
  916 F.2d 63 (2d Cir. 1990)....................................................................................6

*Major League Baseball Players Ass'n v. Garvey*,
  532 U.S. 504 (2001)............................................................................................6

*Manios v. Zachariou*,
  No. 14CV4331 (LTS) (DCF), 2015 WL 1455696 (S.D.N.Y. Mar. 31, 2015) ........................17

*In re Marine Pollution Serv., Inc.*,
  857 F.2d 91 (2d Cir. 1988)....................................................................................7

*Porzig v. Dresdner, Kleinwort, Benson, N. America LLC*,
  497 F.3d 133 (2d Cir. 2007)..................................................................................13

*Revolution Retail Sys., LLC v. Sentinel Techs., Inc.*,
  C.A. No. 10605, 2015 Del. Ch. LEXIS 276 (Del. Ch. Oct. 30, 2015) .............................14, 15

*Schlaifer Nance & Co., Inc. v. Estate of Warhol*,
    194 F.3d 323 (2d Cir. 1999)................................................................................17

*Schwartz v. Merrill Lynch & Co., Inc.*,
    665 F.3d 444 (2d Cir. 2011)...........................................................................7, 13

*Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*,
    559 U.S. 662 (2010)..........................................................................6, 9, 11, 13

*United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*,
    363 U.S. 593 (1960)...............................................................................................6

*Re v. Gannett Co.*,
    480 A.2d 662 (Del. Super. 1984), *aff'd*, 496 A.2d 553 (Del. 1985) ...................14, 15

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004).................................................................................13

*Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997)......................................................................................7

*Zurich American Ins. Co. v. Team Tankers A.S.*,
    811 F.3d 584 (2d Cir. 2016)............................................................................16, 17

**Rules and Statutes**

28 U.S.C. § 1927 .........................................................................................................17

FAA § 10.........................................................................................................................7

FAA § 10(a)(4) ...............................................................................................................6

Fed. R. Civ. P. 54(d)(2).................................................................................................16

Respondents Sirona Dental Systems, Inc., and Arges Imaging Inc. ("Respondents") file this memorandum of law in support of their motion to vacate the final award issued on January 11, 2016, (the "Award") in the arbitration styled *Olav Bergheim and Morteza Gharib v. Sirona Dental Systems, Inc. and Arges Imaging Inc.*, AAA Case No. 13-20-1300-2448 (the "Arbitration") and in opposition to Petitioners' petition and motion to confirm the Award.

## INTRODUCTION

Respondent Sirona purchased Arges, a start-up company, from Petitioners and other former shareholders for an initial payment of $21 million. Sirona paid millions of dollars in additional compensation after the acquisition. Sirona spent an additional $5 million developing the Arges product. As a part of the acquisition agreement and as a way of sharing risk, Sirona agreed to pay two different types of earn-outs to the former shareholders of Arges if the product being developed by Arges (ultimately called "Apollo DI") achieved specific milestones. One of the earn-outs was called an "Accuracy Earn-Out." The former shareholders could become eligible for an Accuracy Earn-Out "[i]f, and only if," Apollo DI achieved "Product Finalization" on or before 18 months after the agreement was entered into. The arbitrator determined that Apollo DI did not achieve Product Finalization until four months after the deadline. In spite of the clear deadline in the agreement, the Award ignored the deadline and granted an Accuracy Earn-Out to Petitioners. In addition, if Product Finalization had been timely achieved, then the former shareholders could become eligible for an Accuracy Earn-Out only if a "Key Accuracy Number" "shall be determined … in the manner set forth in [the] Protocol" attached to the agreement. The arbitrator determined that the Key Accuracy Number was never determined "in the manner set forth in [the] Protocol." In spite of the clear requirements of how the Key Accuracy Number had to be determined, the Award ignored the Protocol requirements and

granted an Accuracy Earn-Out to Petitioners.  Because the Award contradicts the clear terms of the agreement and manifestly disregards the clear terms of the agreement, the Award should be vacated and the petition to confirm the Award should be denied.

In addition, the Award grants damages for an earn-out based on sales of Apollo that never occurred.  The damages were calculated using estimates of potential sales that were created prior to Sirona's acquisition of Arges and before the development of Apollo was completed.  The arbitrator concluded Arges was a small startup company without any sales and concluded Apollo was a new product.  The arbitrator determined that Apollo lacked important features that the market wanted and was a lower quality than competitive products.  The arbitrator explained that between the time the sales projections used as a basis for the damages award were created before Sirona's acquisition of Arges and the time when Apollo was released for sale, the market for digital impression systems changed.  Under those circumstances, Delaware law does not permit damages based on unrealized sales of the new product because they are too speculative.  The Award does not discuss the general rule that a new company and a new product cannot support damages based on unrealized sales and does not identify any facts supporting a departure from Delaware law.  As a result of the manifest disregard of Delaware law, the Award should be vacated and the petition to confirm the Award should be denied.

## BACKGROUND

Arges was "a small startup with limited resources" that was developing a digital impression scanner for dentists to use when the Arges shareholders (including Petitioners) began negotiating the sale of Arges to Sirona.  (Award[1] at 6.)  A digital impression scanner is a three-dimensional camera that takes a digital impression of a patient's teeth.  (Award at 5.)  The

---

[1] The Final Award in the Arbitration is filed as Exhibit 1 to the Petition in this case.  (Dkt. 9-1.)  It is also Exhibit A to the Declaration of Mark A. Robertson dated April 1.  It is identified in this brief as "Award."

traditional method of creating a dental restoration (such as a crown or a bridge) begins with the dentist taking a physical impression of a patient's teeth by having the patient bite into impression material.  (Award at 4-5.)  The physical impression of the teeth is sent to a dental lab.  (Award at 5.)  The dental lab then manufactures the dental restoration (such as a crown or a bridge) and sends the restoration to the dentist who sets it into the patient's mouth.  (*Id.*)

A digital impression scanner or camera (also known as "DI") is a standalone intraoral (inside the mouth) scanner that takes three-dimensional images of a patient's teeth.  (*Id.*)  Instead of a dentist taking a physical impression of the teeth as the dentist does in the traditional method of creating a dental restoration, the dentist who uses the digital impression method uses a digital impression scanner to take a three-dimensional image.  (*Id.*)  The dentist sends the digital impression to a dental lab instead of the physical impression.  (*Id.*)  The dental lab manufactures the dental restoration using the digital impression and sends the dental restoration to the dentist to be set into the patient's mouth.  (*Id.*)

The digital impression scanner that Arges was developing became known as "Apollo DI" after Sirona acquired Arges.  (*Id.*)  The DI product Arges was developing and actually developed after Sirona's acquisition will be referred to in this brief as "Apollo" or "Apollo DI" even though it was not known as Apollo at all times.

Petitioners are former shareholders of Arges Imaging Inc. who represent other former shareholders of Arges in this lawsuit and in the Arbitration.  (Award at 1.)  Petitioners, on their own behalf and on behalf of the other former Arges shareholders, and Sirona entered into an agreement called "Agreement and Plan of Merger by and among Sirona Dental Systems, Inc., AI Merger Corp., Arges Imaging Inc. and Representatives" dated May 5, 2011 (the "Agreement"). (Award at 8; Declaration of Mark A. Robertson dated April 1, 2016 ("Robertson Decl."), ¶ 3, Ex.

- 3 -

B[2] ("Agreement").)  The Agreement also contains the arbitration clause governing this dispute.
(Robertson Decl. ¶ 3; Agreement § 11.16.)

At the time the parties entered into the Agreement, the development of Apollo had not
been completed and "stock options and other incentives were provided [by Sirona] to ensure
employee retention and timely completion of the product development."  (Award at 10.)  "Sirona
wanted to reach a marketable product as quickly as possible as had been the agreed plan."
(Award at 13.)

The former shareholders were paid $21 million at closing.  (Award at 8.)  The former
shareholders had the potential to earn further payments called "Earn-Outs."  (*Id.*)  The
Agreement included two types of Earn-Outs.  (*Id.*)  First, the former Arges shareholders were
entitled to receive $0, $1.5 million, or $3 million of what the Agreement calls an "Accuracy
Earn-Out."  (Agreement § 3.04(c).)  The former Arges shareholders would receive an Accuracy
Earn-Out "[i]f, and only if, Product Finalization occur[red] on or before the 18-month
anniversary of the Closing Date," which was November 16, 2012,[3] and if Apollo achieved an
accuracy level determined under the Protocol set out in Exhibit 3.04(c)(ii) to the Agreement.
(*Id.*; Award at 8.)  Under the Agreement, "Product Finalization" could not occur until
"certification by [Sirona] that Product[4] complies with the requirements for sale of the Product set
forth in Exhibit 3.04(c)(i)" of the Agreement.  (Agreement § 3.04(c); Award at 8-9.)  The
arbitrator concluded "Product Finalization was not certified by Sirona until March 2013, after the
expiration of the 18 month period during which the Accuracy Earn Out could have been
achieved."  (Award at 16.)  The Award granted $3 million, plus interest, to Petitioners based on

---

[2] The Agreement without exhibits and schedules is Exhibit 2 to the Petition (Dkt. 9-2).  (Robertson Decl. ¶ 3.)
[3] Although the Agreement is dated May 5, 2011, the closing did not take place until after May 5, 2011.  (Agreement § 3.01.)  As a result, the 18 month deadline was not 18 months after the date of the Agreement (November 5, 2011), but instead was later, November 16, 2011, because closing occurred on May 16, 2011.
[4] The "Product" became known as "Apollo DI."  (Robertson Decl. ¶ 4; Award at 5.)

the failure of Respondents to pay an Accuracy Earn-Out to the former Arges shareholders. (Award at 43.)

Second, the former Arges shareholders were entitled to potential "Revenue Earn-Out" payments based on a percentage of the revenues received by Arges from the sales of Apollo. (Agreement § 3.04(c); Award at 8.)  The Award granted $4,055,927, plus interest, to Petitioners based on Respondents' purported breach of contract in failing to achieve anticipated sales of Apollo.  (Award at 44.)  The Revenue Earn-Out portion of the Award is based on projections of sales created before the Agreement was entered into and before Apollo was a product ready to be marketed for sale.  (Award at 34, 39 ("analyses conducted by Mr. Klein based on the projections used by Sirona for internal purposes").)

The arbitrator concluded that Apollo was "concededly a new product and a different technology."  (Award at 35.)  The arbitrator explained: "[t]he market changed between 2011 when the [sales] projections [used for the damage award] were prepared and the Agreement was entered into, and mid-2013 when Apollo was finally released in the market."  (*Id*. at 37.)  "By 2013, when Apollo launched, there were several other new entrants in the marketplace, also modestly priced and many were powder free which was more acceptable to the marketplace and had other attractive features."  (*Id*. at 33.)  The arbitrator concluded that "Apollo lacked important features sought in the market and was not as high quality as other products."  (*Id*. at 38.)  Further, the arbitrator held "[t]he market for DI did not develop as expected for Sirona or for others in the market."  (*Id*. at 21.)  In addition as explained above, the arbitrator concluded Arges was "a small startup with limited resources."  (Award at 6.)

**ARGUMENT**

**I.     BECAUSE THE ARBITRATOR DISREGARDED THE CLEAR
        TERMS OF THE AGREEMENT, THE AWARD SHOULD BE VACATED**

The arbitrator disregarded the law in awarding damages based on the Accuracy Earn-Out section of the Agreement.  While it is true that an arbitration award is given deference, "[t]his great deference, however, is not the equivalent of a grant of limitless power." *Leed Architectural Products, Inc. v. Local 6674*, 916 F.2d 63, 65 (2d Cir. 1990).  An "arbitration decision may be vacated under § 10(a)(4) of the FAA on the ground that the arbitrator 'exceeded [her] powers'" "when [the] arbitrator strays from interpretation and application of the agreement and effectively 'dispense[s] [her] own brand of industrial justice.'" *Stolt-Nielsen S.A. v. AnimalFeeds International Corp.*, 559 U.S. 662, 671 (2010) (reversing Second Circuit and vacating arbitration decision) (quoting *Major League Baseball Players Ass'n v. Garvey*, 532 U.S. 504, 509 (2001) (quoting *United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960))); *see* 9 U.S.C. § 10(a)(4) (a court may vacate an arbitration award "where the arbitrators exceed their powers").

As a result, an arbitrator exceeds her authority and the award should be vacated when the arbitrator issues an award that contradicts the clear terms of the agreement between the parties. *See, e.g., 187 Concourse Associates v. Fishman*, 399 F.3d 524, 527 (2d Cir. 2005) (affirming vacatur of arbitration award where award added restrictions not contained in the agreement with a no modification clause); *Henry Hoffman Printing, Inc. v. Local 261*, 950 F.2d 95, 99-100 (2d Cir. 1991) (affirming vacatur because award changed requirements in the agreement).  In *Henry Hoffman*, the Second Circuit vacated an arbitration award because the arbitration panel "creat[ed] entirely new terms" in the agreement where the award imposed additional requirements beyond those required by the agreement. *Id.* at 100.  An arbitrator exceeds her

powers where the award "essentially rewrite[s] the parties' agreement to effect a limitation that is not passably in the language." *Katz v. Feinberg*, 167 F. Supp. 2d 556, 567 (S.D.N.Y. 2001) (vacating portion of award), *aff'd*, 290 F.3d 195 (2d Cir. 2002).

"Under FAA § 10, an arbitrator's award may also be vacated 'where the arbitrator's award is in manifest disregard of the terms of the [parties' relevant] agreement.'" *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 452 (2d Cir. 2011) (quoting *Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc.*, 126 F.3d 15, 23 (2d Cir. 1997)). A court "will overturn an award where the arbitrator merely 'mak[es] the right noise – noises of contract interpretation –' while ignoring the clear meaning of contract terms." *Yusuf,* 126 F.3d at 23 (quoting *In re Marine Pollution Serv., Inc.*, 857 F.2d 91, 94 (2d Cir. 1988) (reversing district court's confirmation of arbitration award)). In *In re Marine Pollution*, the Second Circuit reversed the district court's confirmation of an award because the arbitrator's "award was drawn not from the contract," and instead imposed requirements that differed from the contractual requirements. *In re Marine Pollution*, 857 F.2d at 95.

In this case, the arbitrator exceeded her authority when she granted the Award requiring Respondents to pay an Accuracy Earn-Out to Petitioners because the Award (1) disregarded the clear terms of the Agreement that permit an Accuracy Earn-Out "[i]f, and only if," Sirona certified that Apollo DI complied with the requirements of Exhibit 3.04(c)(i) on or before November 16, 2013, which the arbitrator concluded did not occur, and (2) disregarded the Agreement's clear testing Protocol that had to be followed to determine whether the Accuracy Earn-Out had been earned and had to be paid. By failing to follow the clear terms of the Agreement, the arbitrator essentially rewrote the requirements of the Agreement even though the Agreement prohibits an amendment to the Agreement without a writing signed by Respondents.

(Agreement § 11.08.)   The Award should be vacated under these facts.   *See, e.g., Henry Hoffman*, 950 F.2d at 100.

> **A.**     **For Petitioners to be Eligible for an Accuracy Earn-Out, Product Finalization had to Occur On or Before November 16, 2012, but It Did Not**

Under the Agreement, the Arges investors were entitled to receive $0, $1.5 million, or $3 million of what the Agreement calls an "Accuracy Earn-Out."   (Agreement § 3.04(c).) Petitioners were entitled to an Accuracy Earn-Out if Apollo DI achieved an accuracy level that was determined under a test protocol set out in Exhibit 3.04(c)(ii) to the Agreement.   (*Id*.) Petitioners were entitled to have the accuracy level tested, and potentially receive an Accuracy Earn-Out, "[i]f, and only if, Product Finalization occurs on or before the 18-month anniversary of the Closing Date," which was November 16, 2012.   (Agreement § 3.04(c); Award at 8.) Under the Agreement, "Product Finalization" could not occur until "certification by [Sirona] that Product[5] complies with the requirements for sale of the Product set forth in Exhibit 3.04(c)(i) of the Agreement."   (Agreement § 3.04(c); Award at 8-9.)   Although Petitioners could become eligible for an Accuracy Earn-Out "[i]f and only if, Product Finalization occur[ed] on or before the 18-month anniversary of the Closing Date," November 16, 2012, the arbitrator concluded "Product Finalization was not certified by Sirona until March[6] 2013, after the expiration of the 18 month period during which the Accuracy Earn Out could have been achieved."   (Award at 16.)   The arbitrator "conclude[d] that the delays in the introduction of Apollo to the market until the spring of 2013 was due to no fault of Sirona's, but rather to the difficulties encountered by the Arges personnel with developing the product and correcting technical deficiencies so that it

---

[5] The "Product" became known as "Apollo DI."   (Robertson Decl. ¶ 5; Award at 5.)
[6] Although the arbitrator made a factual determination that Product Finalization was certified by Sirona in March 2013, the undisputed testimony was that Product Finalization was not certified until April 2013.  For purposes of this motion to vacate, it does not matter whether Production Finalization was certified in March or April 2013 since either month was too late for Petitioners to be eligible for an Accuracy Earn-Out.

could be ready for sale." (Award at 15.) Further, the arbitrator "finds that Sirona's support of the technical development of Apollo was commercially reasonable and in good faith." (Award at 16.)

The arbitrator ignored the clear and unambiguous requirement that an Accuracy Earn-Out would be due and owing "[i]f and only if, Product Finalization occur[ed] on or before" November 16, 2012. (Agreement § 3.04(c).) In making a factual determination that Product Finalization as defined by Section 3.04(c) of the Agreement did not occur until March 2013 (four months after the deadline imposed by section 3.04(c) of the Agreement), but deciding to award an Accuracy Earn-Out of $3 million (Award at 17), the arbitrator exceeded her powers and manifestly disregarded the terms of the Agreement. In essence, the Award created entirely new terms with a different deadline for Product Finalization, terms that were different from and inconsistent with the terms of the Agreement because the actual terms of the Agreement permit an Accuracy Earn-Out "[i]f, and only if, Product Finalization occurs on or before" November 16, 2012. (Agreement § 3.04(c).) The Award should be vacated as a result. *E.g., Henry Hoffman*, 950 F.2d at 100 (affirming vacatur because the award "creat[ed] entirely new terms"). The arbitrator "effectively 'dispens[ed] [her] own brand of industrial justice.'" *Stolt-Nielsen*, 559 U.S. at 671 (reversing Second Circuit and vacating arbitration award).

In addition, Product Finalization could not have occurred prior to November 16, 2012, because the requirements in Exhibit 3.04(c)(i) were not met until after November 16, 2012. As explained above, Product Finalization could not occur until Sirona certified the requirements of Exhibit 3.04(c)(i) had been achieved. (Agreement § 3.04(c); Award at 8-9.) After the November 16, 2012 deadline when Product Finalization had to be achieved for Petitioners to be entitled to

the possibility of an Accuracy Earn-Out, Dave Licata[7] reported on the "Status of Software" on December 3, 2012 that "[b]ugs existed" in the software that had to "be resolved over the next 5 weeks" and "[o]utstanding software development" had to be accomplished.  (Declaration of Mark A. Robertson dated April 1, 2016 ("Robertson Decl.") ¶ 5, Ex. C (Arbitration Respondents' Exhibit ("R-Ex.") 1115 at SIRONA0011885).)  Among other requirements for the achievement of Product Finalization, Exhibit 3.04(c)(i) to the Agreement required that "System shall meet all US legal requirements including FDA regulations necessary for sale in the US as a medical device."  (Agreement (Exhibit 3.04(c)(i)) at SIRONA0044344.)  As late as March 22, 2013, Apollo did not "fulfill all legal requirements for a medical device," including "incorporation of the medical grade power supply."  (Robertson Decl., ¶ 7, Ex. D (Arbitration R-Ex. 1118) at SIRONA0026405.)  Mr. Licata explained that "we must complete testing to show that the computer still meets all legal requirements after the change to the power supply."  (Robertson Decl., ¶ 8, Ex. E (Arbitration R-Ex. 1121) at SIRONA0028460.)  Mr. Licata wrote on March 22, 2013, that "[u]pon successful completion of these tests we should then fulfill the last outstanding requirement of Product Finalization."  (Id.)  Mr. Licata explained in late April 2013 that there were "outstanding items for Product Finalization" including required reports and documentation on electrical safety, human factors, and software.  (Robertson Decl., ¶ 9, Ex. F (Arbitration R-Ex. 1122) at SIRONA0013527.)[8]  Mr. Licata identified other items that needed to be completed for the commercialization of Apollo DI, but that did not have to be completed for Product Finalization to be declared.  (Id.)  Because Product Finalization was not declared and

---

[7] Dave Licata was "COO and principal executive officer of Arges prior to the acquisition who continued as general manager of Arges after the merger until January 2015."  (Award at 3.)

[8] Even though Product Finalization was declared almost six months past the Product Finalization deadline for the Accuracy Earn-Out, Petitioner Gharib was entitled to a $1 million payment upon Product Finalization, which he was paid.  (Robertson Decl. ¶ 10, Ex. G (Arbitration Hearing Transcript) at 377:19-378:9.)  Other former Arges shareholders represented by Petitioners were also entitled to payments, which were paid, upon Product Finalization. (Id. at 378:13-22; 379:20-25; Award at 8 ("holdback which was later paid and is not in dispute").)

could not have been declared until months after the November 2012 deadline, the arbitrator disregarded the clear requirements of the Agreement, "effectively 'dispens[ing] [her] own brand of industrial justice,'" requiring the Award to be vacated.   *Stolt-Nielsen*, 559 U.S. at 671 (reversing Second Circuit and vacating arbitration award).

**B.     The Arbitrator Ignored the Contractually Mandated Test Protocol Required to Establish Whether an Accuracy Earn-Out had been Achieved**

The arbitrator ignored or fashioned new contractual terms by awarding Petitioners an Accuracy Earn-Out even though the required protocol to be followed to demonstrate accuracy was not followed.   "If, and only if, Production Finalization occur[red] on or before" November 16, 2012, Petitioners would be eligible for the Accuracy Earn-Out only if Apollo DI achieved a specified "Key Accuracy Number" that "shall be determined" "in the manner set forth in Protocol for Relative Benchmarking of Dental Imaging Systems … attached as Exhibit 3.04(c)(ii)."   (Agreement at § 3.04(c).)   If the Key Accuracy Number determined by following the Protocol was (i) "equal to or greater than 75.0, the Accuracy Earn-Out will be $3,000,000," (ii) "less than 75.0 but greater than 50.0, the Accuracy Earn-Out will be $1,500,000," and (iii) "less than or equal to 50, the Accuracy Earn-Out will be $0."   (Agreement at § 3.04(c)(i)-(iii).)

The detailed Protocol in Exhibit 3.04(c)(ii) of the Agreement was never followed to determine whether the criteria for an Accuracy Earn-Out payment had been met.   (Award at 16-17 (describing an "informal subset of the test" performed by Alexei Harvard).)   The only evidence about what was done to determine accuracy is an e-mail saying Mr. Harvard conducted "a couple of scans" of one model of a jaw using an Apollo DI.   (Robertson Decl. ¶ 11, Ex. H (Arbitration Claimants' Exhibit ("C-Ex.") 168) at SIRONA0017188.)   The Agreement's Protocol required a rigorous battery of tests to determine whether Apollo DI could meet a Key Accuracy Number that would support an Accuracy Earn-Out.   Instead of a test by a single individual like

Alexei Harvard who was a lead designer of Apollo and who had been working with Apollo for years, the Protocol in Exhibit 3.04(c)(ii) of the Agreement required tests to be performed (1) by "3 operators with a basic level of experience in the respective camera system perform the protocol"; (2) on eight different "situations" consisting of three "single tooth situations," three "bridge situations," one "semiarches" situation, and one "full arches" situation; (3) "[e]ach situation is scanned 2 times, repeating the sequence and orientation of the camera best as could….followed by every operator"; and (4) "[e]ach scan is to be performed using 3 different cameras."   (Agreement (Exhibit 3.04(c)(ii)) at SIRONA0044272-73.)   The results from the different scans were to be added together to determine the Key Accuracy Number.   (*Id.* at SIRONA0044283-86.)   The "couple of scans" by Mr. Harvard, who was a lead developer of Apollo who used the system for years,[9] does not meet the requirements of having "3 operators with a <u>basic level</u> of experience" perform two scans of each of the eight situations with "[e]ach scan … using 3 different cameras" to determine the Key Accuracy Number.   (*Id.* at SIRONA0044272-73 (emphasis added).)

The arbitrator changed the requirements of the Agreement's Protocol and did not require the Protocol to be followed to show whether Apollo achieved a Key Accuracy Number that would be sufficient to support an Accuracy Earn-Out.   A test was not conducted by "3 operators with a basic level of experience."   Instead, one highly experienced user conducted "a couple of scans."   (Robertson Decl. ¶ 11, Ex. H (Arbitration C-Ex. 168) at SIRONA0017188.)   A test was not done consisting of "[e]ach scan … using 3 different cameras."   Instead, a "couple of scans" using one Apollo system were done.   (*Id.*)   A test was not done of "[e]ach [of eight] situation[s]

---

[9] Alexei Harvard was responsible for the software development of the Apollo DI from at least 2010 through May 2013.  (Robertson Decl. ¶ 10, Ex. G (Arbitration Transcript) at 396:24-397:2; 590:23-592:6.)  Mr. Harvard did scanning with Apollo from at least 2010.  (*Id.* (Arbitration Transcript) at 353:8-354:18; 2424:19-2425:8 (describing video from before May 2012 of Alexei Harvard scanning a model); Ex. I (Arbitration R-Ex. 1070).)

is scanned 2 times."   Instead, a "couple of scans" were done.   *Id.*   By ignoring the clear requirements of the Agreement that the "Key Accuracy Number" "shall be determined" "in the manner set forth in Protocol for Relative Benchmarking of Dental Imaging Systems … attached as Exhibit 3.04(c)(ii)" (Agreement at § 3.04(c)), the arbitrator "effectively 'dispense[ed] [her] own brand of industrial justice.'"   *Stolt-Nielsen*, 559 U.S. at 671 (reversing Second Circuit and vacating arbitration award).   The Award should be vacated as a result.   *E.g., Henry Hoffman*, 950 F.2d at 100 (affirming vacatur because the award "creat[ed] entirely new terms").

## II.   BECAUSE THE ARBITRATOR MANIFESTLY DISREGARDED THE LAW, THE AWARD SHOULD BE VACATED

The arbitrator disregarded the law in awarding damages based on the Revenue Earn-Out provision of the parties' agreement.   "[T]he court may set aside an arbitration award if it was rendered in 'manifest disregard of the law.'"   *Schwartz v. Merrill Lynch & Co., Inc.*, 665 F.3d 444, 451 (2d Cir. 2011).   Manifest disregard exists where "'both that (1) the arbitrators knew of a governing legal principle yet refused to apply it or ignored it altogether, and (2) the law ignored by the arbitrators was well-defined, explicit, and clearly applicable to the case.'"   *Porzig v. Dresdner, Kleinwort, Benson, N. America LLC*, 497 F.3d 133, 139 (2d Cir. 2007) (affirming finding of manifest disregard of the law) (quoting *Wallace v. Buttar*, 378 F.3d 182, 189 (2d Cir. 2004)).   In *Porzig*, the Second Circuit upheld the district court's determination that the arbitration panel issued its award in manifest disregard of the law "finding there had been 'ample evidence to support the conclusion that the arbitrators were made aware of the applicable law but either refused to apply or ignored it altogether.'"   *Porzig*, 497 F.3d at 139 (quoting district court opinion).   In this case, the arbitrator refused to apply Delaware law or ignored the Delaware law that states estimates of sales of a new company and new technology are too speculative to support a damages award.

"Delaware courts have held that 'measuring money damages for an unproven technology' is a 'nearly impossible task' because 'such damages are likely to be merely speculative.'" *Revolution Retail Sys., LLC v. Sentinel Techs., Inc.*, C.A. No. 10605, 2015 Del. Ch. LEXIS 276, at *84 (Del. Ch. Oct. 30, 2015) (no damages because it was a new business) (quoting *Amaysing Techs. Corp. v. Cyberair Communs., Inc.*, C.A. No. 19890, 2004 Del. Ch. LEXIS 72, at *17 (Del. Ch. May 28, 2004)).   "[A]s a general rule, evidence of expected profits from a new business is too speculative, uncertain and remote to be considered where there is no history of prior profits."  *Re v. Gannett Co.*, 480 A.2d 662, 667 (Del. Super. 1984), *aff'd*, 496 A.2d 553 (Del. 1985); *see also In re Heizer Corp.*, C.A. No. 7949, 1990 Del. Ch. LEXIS 71, at *10 (Del. Ch. May 25, 1990) ("'start-up' company" without a commercially competitive product could not prove damages because sales were speculative).

Arges was a small startup.   (Award at 6.)   The Award recognizes Apollo was "concededly a new product and a different technology."   (Award at 35.)   The Award also recognizes that "[t]he market changed between 2011 when the [sales] projections [used in the damage model] were prepared and the Agreement was entered into, and mid-2013 when Apollo was finally released in the market."  (*Id*. at 37.)  "By 2013, when Apollo launched, there were several other new entrants in the marketplace, also modestly priced and many were powder free which was more acceptable to the marketplace and had other attractive features."  (*Id*. at 33.) Further, the Award recognizes that "Apollo lacked important features sought in the market and was not as high quality as other products."  *Id*. at 38.  The arbitrator did not identify any law or facts and did not conduct any analysis to determine why the Delaware general rule does not apply that damages are too speculative "for an unproven technology" and for "a new business," particularly where she concluded the "market changed," "Apollo lacked important features," and

Apollo "was not as high quality as other products."  *See, e.g., Revolution Retail*, 2015 Del. Ch. LEXIS 276 at *84 (no damages where "unproven technology"); *Re*, 480 A.2d at 667 ("evidence of expected profits from a new business is too speculative, uncertain and remote to be considered where there is not history of prior profits").  Under these circumstances, the Delaware general rule applies and damages should not have been awarded.  The Award does not explain why the Delaware general rule should be ignored and does not analyze the Delaware rule at all.  No evidence is identified in the Award and none was submitted during the Arbitration that supports a departure from the Delaware rule.

The arbitrator was aware of the case law setting out the Delaware law, but ignored it.  Although the Award does not say the arbitrator ignored Delaware law, the Second Circuit has explained "we doubt whether even under a strict construction of the meaning of manifest disregard it is necessary for arbitrators to state that they are deliberately ignoring the law." *Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197, 204 (2d Cir. 1998) ("reversed the district court's orders … refusing to vacate and then confirming the award").  Instead, a party seeking to show manifest disregard needs to show that the arbitrator was made aware of the law.  *Id*.  In this case, the Award cites some of the cases cited by Respondents for the proposition that profits for a new product by a new company do not support a damage award, but the Award does not discuss the proposition those cases stand for and does not discuss how damages could be assessed where both the company and the product are new without a history of sales.  (Award at 35 (citing *Revolution Retail Sys.*, 2015 Del. Ch. LEXIS 276, at *84 (no damages because it was a new business) and *Amaysing Techs. Corp.*, 2004 Del. Ch. LEXIS 72, at *18 ("nearly impossible task of measuring money damages for an unproven technology")).)  This Court should follow the Second Circuit's suggestion in *Halligan* that "the failure of the arbitrators to explain the award

can be taken into account" in determining whether the arbitrator disregarded the law.  148 F.3d at

204.  Because the arbitrator in this case manifestly disregarded Delaware law and did not explain

why the Delaware general rule should be ignored, the Award should be vacated.  *Id*.

### III.   ATTORNEYS' FEES SHOULD NOT BE AWARDED TO PETITIONERS ON THEIR MOTION TO CONFIRM

Petitioners are not entitled to attorneys' fees for this lawsuit.  In determining whether

attorneys' fees should be awarded when a court considers a motion to confirm or vacate an

arbitration award, the American Rule applies, which means "'[e]ach litigant pays his own

attorney's fees, win or lose, unless a statute or contract provides otherwise.'"  *Zurich American*

*Ins. Co. v. Team Tankers A.S.*, 811 F.3d 584, 590 (2d Cir. 2016) (reversing district court's award

of attorneys' fees related to motions to vacate and confirm an arbitration award) (quoting *Botts*

*L.L.P. v. ASARCO LLC*, ___ U.S. ___, 135 S.Ct. 2158, 2164 (2015)).

Rule 54(d)(2), Fed. R. Civ. P., requires a litigant requesting attorneys' fees, such as

petitioners, to "specify the judgment and the statute, rule, or other grounds entitling the movant

to the award" of attorneys' fees in the motion and to "state the amount sought or provide a fair

estimate of it" in the motion.  *CF Global Trading, LLC v. Wassenaar*, No. 13 Civ. 766 (KPF),

2013 WL 5538659, at *11 (S.D.N.Y. Oct. 8, 2013) (confirming arbitration award, denying

motion to vacate, and denying motion for attorneys' fees and stating: "Without any authority

instructing the award of attorneys' fees here, this Court declines to do so.").  Petitioners fail to

identify any grounds entitling them to attorneys' fees.  (Pls' Mem. of Law in Support of Petition

for an Order at 14.)  The agreement between the parties authorizes reasonable attorneys' fees "in

connection with the arbitration."   (Agreement § 11.16.)   Even though the paragraph that

authorizes attorneys' fees "in connection with the arbitration" also permits an arbitration award

to be "entered into in any court having jurisdiction thereof, or application may be made to such

court for a judicial acceptance of the decision in an order of enforcement," the Agreement is silent about, and does not authorize, attorneys' fees related to such a court proceeding, a motion to confirm an arbitration award, or a motion vacate an arbitration award.  (*Id.*)  As a result, attorneys' fees should not be awarded.  *See, e.g., Zurich American*, 811 F.3d at 590-91.

To the extent that Petitioners are seeking fees pursuant to the Court's inherent power or 28 U.S.C. § 1927, Petitioners would have to show "'(1) the challenged claim was without a colorable basis and (2) the claim was brought in bad faith, *i.e.*, motivated by improper purposes such as harassment or delay.'"  *Manios v. Zachariou*, No. 14CV4331 (LTS) (DCF), 2015 WL 1455696, at *7 (S.D.N.Y. Mar. 31, 2015) (denying motion for attorney's fees related to motions to vacate and confirm arbitration award) (quoting *Schlaifer Nance & Co., Inc. v. Estate of Warhol*, 194 F.3d 323, 336 (2d Cir. 1999)).  No evidence exists that the motion to vacate is without a colorable basis or motivated by improper purposes such as harassment or delay.  The motion to vacate has a colorable basis and is not motivated by an improper purpose.  (Robertson Dec., ¶ 14.)  Even if Respondents' "arguments are ultimately unavailing, it cannot be said that they are so completely without merit that the Court must find that [their] motion was filed for an improper purpose, such as harassment or delay."  *Manios*, 2015 WL 1455696 at *7.

As a result, Petitioners' request for attorneys' fees related to this case should be denied.

## CONCLUSION

For the reasons stated, this Court should (1) vacate the Arbitration Award, (2) deny the

petition and motion to confirm the Award, (3) deny Petitioners' request for attorneys' fees in this

case, and (4) grant such other relief to which Respondents shall show themselves to be entitled.

Dated: April 1, 2016                    Respectfully Submitted

                                        **NORTON ROSE FULBRIGHT US LLP**

                                        By: _____
                                            Mark A. Robertson
                                            666 Fifth Avenue
                                            New York, New York 10103
                                            Telephone: 212-318-3000
                                            Facsimile:  212-318-3400
                                            mark.robertson@nortonrosefulbright.com
                                            *Counsel for Respondents Sirona Dental*
                                            *Systems, Inc. and Arges Imaging Inc.*