UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

OLAV BERGHEIM and MORTEZA GHARIB,

        Petitioners,

    -v-                               No.  16 CV 1692-LTS

SIRONA DENTAL SYSTEMS, INC., and
ARGES IMAGING INC.,

        Respondents.

-------------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        Petitioners Olav Bergheim and Morteza Gharib (collectively, "Petitioners") and

Respondents Sirona Dental Systems, Inc. ("Sirona") and Arges Imaging Inc. ("Arges" and, with

Sirona, "Respondents") have filed cross-motions to confirm or vacate an arbitration award dated

January 11, 2016 (Petition Ex. 1 (the "Award")).  Petitioners have also requested an award of:

(1) pre- and post-judgment interest, (2) reasonable attorneys' fees incurred in bringing this

proceeding, and (3) other relief the Court deems just and appropriate.  The Court has jurisdiction

of this action pursuant to 28 U.S.C. § 1332.  The Court has considered the parties' submissions

carefully and, for the reasons stated below, grants Petitioners' motion for confirmation of the

Award and Petitioners' request for pre-judgment and post-judgment interest, and denies

Respondents' cross-motion to vacate the Award.  Petitioners may make a separate motion,

pursuant to Federal Rule of Civil Procedure 54(d), for attorneys' fees.

BACKGROUND

This case arises from the merger of Sirona and Arges, and subsequent disputes over payments owed to Arges shareholders pursuant to the merger agreement.  (Petition ¶¶ 7-8.) The relevant facts discussed herein are drawn from the Award, except as otherwise noted, and are not disputed by the parties.

Sirona develops, manufactures, and markets technology for computer-aided design and computer-aided manufacturing (CAD/CAM).  (Award at 2.)  Before the merger, Arges was a small startup company that developed and commercialized hardware and software for generating 3-D surface data for dental applications.  (Id.)  Arges developed an inexpensive dental scanning device called the Apollo for the CAD/CAM market.  (Id. at 6.)  In 2009, Sirona and Arges began discussions about the possibility of Sirona acquiring Arges.  (Id.)  The parties entered into a merger agreement (the "Agreement") on May 5, 2011, which governed the terms of Sirona's acquisition of Arges.  (Id. at 8.)

The Agreement provided that Sirona would pay Arges shareholders an "Accuracy Earn Out" of $3 million if "Product Finalization" was achieved on or before November 16, 2012, the eighteen-month anniversary of the Closing Date of the Agreement, as well as a "Revenue Earn Out" based on revenues and sales of the Apollo up to a cap of $25 million.  (Id.)  Product Finalization was to occur upon Sirona's certification that the Apollo complied with the requirements for sale stated in the Agreement.  (Id.)  With respect to Revenue Earn Out, the Agreement stipulated that Sirona had an obligation to "cause the Business to be conducted in good faith and . . . exercise its commercially reasonable efforts to promote the interests of the Business to achieve realization of the Revenue Earn-Out."  (Id. at 9.)

Petitioners are former shareholders of Arges and the shareholder representatives

of the former Arges shareholders under the Agreement.  (Id. at 1.)  Petitioners are empowered to

bring and maintain claims asserted on behalf of all former Arges shareholders.  (Id.)  The

Agreement provided that (with certain exceptions not relevant here) any dispute arising out of or

relating to the Agreement was to be determined by arbitration.  (Id. at 3.)  It also provided that

Delaware law controlled all questions concerning the construction, validity, interpretation, and

enforceability of the Agreement, without giving effect to choice of law or conflict of law

provisions that would cause the application of another jurisdiction's laws.  (Id.; Petition Ex. 2

(Agreement) § 11.12.)

After several disputes arose between Petitioners and Respondents over the

Accuracy Earn Out and Revenue Earn Out payments, Petitioners filed their demand for

arbitration on November 19, 2013.  (Award at 2.)  In October 2015, the arbitration proceeding

took place in New York City over a six-day period before a one-person arbitration tribunal (the

"Tribunal") of the American Arbitration Association.  (Id.)  At the hearing, eleven witnesses

testified, and numerous documents were entered into evidence and discussed in the witness

statements.  (Id. at 2-3.)  Petitioners and Respondents submitted pre-hearing and post-hearing

briefs, as well as applications for costs and fees.  (Id. at 3.)  Oral argument was conducted on

November 18, 2015, and the hearing was closed on December 3, 2015.  (Id.)  No party

challenged the jurisdiction of the Tribunal to determine the claims asserted.  (Id.)

The Tribunal issued its forty-six-page Award on January 11, 2016, which found

in favor of Petitioners and against Respondents for breach of contract on the claims for Accuracy

Earn Out and Revenue Earn Out payments.  (Id. at 43-44.)  The Tribunal held that Petitioners

were entitled to the Accuracy Earn Out of $3 million because (1) Sirona delayed certification of

Product Finalization as it awaited completion of extra-contractual requirements for purposes of

going to market in addition to the requirements set forth in the Agreement, (2) Arges was

deprived of the opportunity to test and see if the Accuracy Earn Out criteria were met, and (3) an

unofficial test conducted before the deadline demonstrated that the Apollo met the standard of

accuracy set forth in the Agreement.  (Id. at 17.)  The Tribunal also found that, by failing to

significantly reduce prices or change the distribution system to improve sales, Sirona breached

its contractual obligations to conduct the business in good faith and exercise commercially

reasonable efforts to promote the interests of the business and achieve realization of the Revenue

Earn Out.  (Id. at 28.)

The Award discusses at length the various models and variables the Tribunal

considered when calculating Revenue Earn Out damages, such as delays to market, alleged

changes to expected market growth, and internal and external sales estimates.  (Id. at 31-42.)

The Tribunal considered expert reports, projections, and testimony; past sales; and thousands of

expert calculations as well as hundreds of additional permutations of calculations.  (Id.)  The

Tribunal ordered Respondents to pay $3,000,000 plus interest for the Accuracy Earn Out

payment and $4,055,927 plus interest for the Revenue Earn Out payment.  (Id.)  It also ordered,

pursuant to the Agreement, that Respondents pay $1,087,472 for Petitioners' attorney's fees and

costs incurred in connection with the arbitration.  (Id. at 45; Agreement § 11.16.)

DISCUSSION

Under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. (the "FAA"), courts may

vacate an arbitrator's decision "only in very unusual circumstances."  First Options of Chi., Inc.

v. Kaplan, 514 U.S. 938, 942 (1995); see also D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110

(2d Cir. 2006) ("A party moving to vacate an arbitration award has the burden of proof, and the

showing required to avoid confirmation is very high.").  Here, Respondent argues that the Award

should be vacated because the Tribunal exceeded its powers and acted in manifest disregard of

the law.

When a party moves for vacatur on the grounds that the arbitrator exceeded his

powers, the "sole question" for the reviewing court "is whether the arbitrator (even arguably)

interpreted the parties' contract, not whether he got its meaning right or wrong."  Oxford Health

Plans LLC v. Sutter, 133 S. Ct. 2064, 2068 (2013); see also ReliaStar Life Ins. Co. of N.Y. v.

EMC Nat. Life Co., 564 F.3d 81, 86 (2d Cir. 2009) ("[A]s long as the arbitrator is even arguably

construing or applying the contract and acting within the scope of his authority, a court's

conviction that the arbitrator has 'committed serious error' in resolving the disputed issue 'does

not suffice to overturn his decision.'" (internal quotation marks and citations omitted)).  Only

where an arbitrator "strays from interpretation and application of the agreement and effectively

'dispense[s] his own brand of industrial justice'" is the resulting award unenforceable as

exceeding the bounds of the arbitrator's authority.  Stolt-Nielsen S.A. v. AnimalFeeds Int'l

Corp., 559 U.S. 662, 671 (2010) (quoting Major League Baseball Players Ass'n v. Garvey, 532

U.S. 504, 509 (2001)).

Awards may also be vacated "in the limited circumstances where the arbitrator's

award is in manifest disregard of the terms of the agreement" or "in manifest disregard of the

law."  Yusuf Ahmed Alghanim & Sons v. Toys "R" Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997)

(internal quotation marks and citations omitted).  The Second Circuit "appl[ies] a notion of

'manifest disregard' to the terms of the agreement analogous to that employed in the context of

manifest disregard of the law."  Id. at 25.  For an award to be in manifest disregard of the

agreement or the law, "[t]he error must have been obvious and capable of being readily and

instantly perceived by the average person qualified to serve as an arbitrator.  Moreover, the term

'disregard' implies that the arbitrator appreciates the existence of a clearly governing legal

principle but decides to ignore or pay no attention to it."  Merrill Lynch, Pierce, Fenner & Smith,

Inc. v. Bobker, 808 F.2d 930, 933 (2d Cir. 1986) (citations omitted).  "[M]ere error in the law or

failure on the part of the arbitrators to understand or apply the law" is not enough to sustain a

finding of manifest disregard of the law.  Yusuf Ahmend Alghanim & Sons, 126 F.3d at 23

(citation omitted); see also Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200, 214 (2d

Cir. 2002) (holding that an arbitrator's "factual findings and contractual interpretation are not

subject to judicial challenge, particularly on [a court's] limited review of whether the arbitrator

manifestly disregarded the law").  "If the arbitrator has provided even a barely colorable

justification for his or her interpretation of the contract, the award must stand."  Westerbeke, 304

F.3d at 222.

> Respondents argue that: (1) the Tribunal exceeded its powers by granting an

award that manifestly disregarded the Agreement's Accuracy Earn Out provision requiring

compliance with the Product Finalization deadline and accuracy test protocol, and (2) the

Tribunal manifestly disregarded Delaware law in awarding damages for a new product or

business.  Neither argument establishes a proper ground for vacatur of the Award.

> The interpretation of the Agreement's Accuracy Earn Out provision was clearly a

matter within the scope of authority that the parties granted to the Tribunal.  The Tribunal did

not ignore the Accuracy Earn Out provision's requirements or create new terms of the

Agreement.  Rather, it explicitly recognized the terms and construed them in light of

Respondents' conduct, specifically extra-contractual tasks as additional pre-conditions of

Product Finalization and depriving Petitioners of the opportunity to perform accuracy testing.

(Award at 17.)  As explained above, the Tribunal's factual findings and contractual interpretation are not subject to judicial challenge.  There is at least a colorable justification for the Tribunal's interpretation that the unofficial test demonstrating that the Apollo met the standard of accuracy set forth in the Agreement entitled Petitioners to the Accuracy Earn Out.  (Id.)  Thus, the Tribunal did not exceed its powers, dispense its own brand of justice, or manifestly disregard the terms of the Agreement.

Respondents' second argument is that the arbitrator manifestly disregarded the law by ignoring or refusing to apply the Delaware law principle that sales estimates of a new company and technology are generally too uncertain to support a damages award.  Notably, none of the Delaware state cases cited by Respondents prohibits awards of damages for new products. See, e.g., Revolution Retail Sys., LLC v. Sentinel Techs., Inc., No. 10605-VCP, 2015 WL 6611601, at *24 (Del. Ch. Oct. 30, 2015) (holding that measuring damages for an unproven technology is "nearly impossible" because "such damages are likely to be merely speculative"). The Tribunal found that Petitioners' expert reports, testimony, and calculations were not too speculative, and that Petitioners' evidence met the Delaware law requirement that "damages be shown with reasonable certainty."  (Award at 36 (citing LaPointe v. Amerisourcebergen Corp., No. Civ. A. 327-CC, 2007 WL 2565709, at *9 (Del. Ch. Sept. 4, 2007)).)  Because the Tribunal reached its decision on the basis of historical and expert information about sales projections and actual past sales, and provided a lengthy explanation of the variables and models it used to determine damages (Award at 31-42), the Court sees no basis for a conclusion that the Tribunal manifestly disregarded or even misapplied established law.  Respondents' motion to vacate the Award is therefore denied, and Petitioners' motion for confirmation is granted.

This Court has the inherent authority to award pre-judgment interest in

connection with the confirmation of an arbitral award.  See Waterside Ocean Navigation Co.,

Inc. v. Int'l Navigation Ltd., 737 F.2d 150, 153 (2d Cir. 1984).  There is a presumption in favor

of awarding pre-judgment interest running from the time of the award through the court's

judgment confirming the award, at a rate prescribed by the state statutory law governing the

contract.  In re Arbitration Between Westchester Fire Ins. Co. v. Massamont Ins. Agency, Inc.,

420 F. Supp. 2d 223, 226-27 (S.D.N.Y. 2005) (Chin, J.).  In Delaware, the legal rate of interest is

"five percent over the Federal Reserve discount rate . . . as of the time from which interest is

due."  6 Del. C. § 2301; see U.S. for Use of Endicott Enter. Inc.v. Star Brite Const. Co., 848 F.

Supp. 1161, 1169 (D. Del. 1994).

      The Federal Reserve discount rate on the day the Award was issued was one

percent, and the rate was raised to 1.25 percent on December 14, 2016.  This Court will,

accordingly, grant Petitioners pre-judgment interest at the rate of six percent per annum from

January 11, 2016, through December 14, 2016, and at the rate of 6.25 percent per annum from

December 15, 2016, through the date of this opinion.  The Court also awards post-judgment

interest, pursuant to 28 U.S.C. § 1961, to accrue from the date judgment is entered until payment

is made.

CONCLUSION

      For the foregoing reasons, Petitioners' motion to confirm the Award is granted

and Respondents' cross-motion to vacate the Award is denied.  Judgment will therefore be

entered in favor of Petitioners and against Respondents, jointly and severally, as follows:

  (1) for the Accuracy Earn-Out, $3,000,000, plus simple interest at the rates prescribed by

Delaware law from October 23, 2012, through the date of this Order, for a total of

$3,742,089.04;[1] and

(2) for the Revenue Earn-Out, a total of $4,055,927, plus simple interest at the rates prescribed by Delaware law as follows:

(a) on $97,562, from October 1, 2013, through the date of this Order, plus

(b) on $700,234, from October 1, 2014, through the date of this Order, plus

(c) on $945,076, from October 1, 2015, through the date of this Order, plus

(d) on the remaining $2,313,055, from January 11, 2016, through the date of this Order,

for a total of $4,388,683.15; and

(3) for attorneys' fees and costs associated with the arbitration, a total of $1,087,572, plus simple interest at the rates prescribed by Delaware law from January 11, 2016, through the date of this Order, for a total of $1,155,634.64.

Petitioners may file a motion requesting attorneys' fees and costs incurred in connection with these award confirmation proceedings pursuant to Federal Rule of Civil Procedure 54(d).

The Clerk of Court is respectfully requested to enter judgment in favor of Petitioners in the total amount of $9,286,406.83, and close this case.

---

[1]     Interest on all principal award amounts was calculated in accordance with the Award and, with respect to the period after the Award was rendered, this Court's award of pre-judgment interest at the rate prescribed by Delaware law, taking into account changes to the Federal Reserve's discount rate on December 16, 2015, and December 14, 2016.

This Memorandum Opinion and Order resolves docket entry nos. 6 and 20.

SO ORDERED.

Dated: New York, New York
       January 24, 2017

       /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge